NOT FOR PUBLICATION [41,45,47,50,52,54]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| GREAT WESTERN MINING & MINERAL COMPANY, | : : : | |
| Plaintiff, | : | Civil Action No. 09-2907 (FLW) |
| | : | |
| v. | : | |
| | : | OPINION |
| ADR OPTIONS, INC., BROWNSTEIN AND VITALE, P.C., BROWNSTEIN, VITALE & WEISS, P.C., | : : : : | |
| Defendants. | : : | |

---

**WOLFSON, United States District Judge:**

Presently before the Court are numerous motions filed by Plaintiff Great Western Mining & Mineral Company ("Great Western" or "Plaintiff") and Defendants ADR Options, Inc. ("ADR"), Brownstein and Vitale, P.C. and Brownstein, Vitale & Weiss, P.C. ("Brownstein ") (collectively "Defendants"). This action represents the fifth of at least six lawsuits concerning a legal malpractice action that was originally commenced in the Philadelphia Court of Common Pleas in 1999. Specifically, in this action, Plaintiff alleges that Defendants failed to disclose certain relationships prior to a 2003 arbitration arising from the alleged legal malpractice, and that such failures affected the outcome of the arbitration. Plaintiff asserts causes of action for Breach of Contract, Negligent Misrepresentation, Fraud, Violations of the New Jersey Consumer Fraud Act, Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for Punitive Damaes. The following motions are currently pending before this Court:

1

Plaintiff's Motion to Change Venue (Dkt. 41); Plaintiff's Motion for Leave to File a Second

Amended Complaint (Dkt. 54); ADR's Motion to Dismiss or, in the Alternative, for Summary

Judgment (Dkt. 45); Brownstein's Motion to Dismiss or, in the Alternative, for Summary

Judgment (Dkt. 47); ADR's Cross-Motion for Sanctions (Dkt. 50); and Brownstein's Cross-

Motion for Sanctions (Dkt. 52). For the reasons that follow, Plaintiff's motions are denied and

Defendants' motions are granted.


**I. FACTUAL BACKGROUND**

As other courts have aptly observed, this case has a "tortured procedural history"

spanning nearly 13 years and a multitude of state and federal courts. See, e.g., Great Western

Mining &Mineral Co. v. Fox Rothschild LLP,2009 WL 704335, at *1(D.N.J. 2009); Great

Western Mining & Mineral Co. v. Fox Rothschild LLP, 2006 WL 1769616, at *1 (Pa. Com. Pl.

2006). Because the parties are intimately familiar with the facts and procedural history of this

case, the Court will summarize the relevant portions herein, and will also adopt the factual

statement set forth in Great Western Mining & Mineral Co., v. Fox Rothschild LLP, 615 F.3d

159 (3d Cir. 2010).


A.      Initial Litigation and Subsequent Arbitration

This case originates out of a dispute involving the construction of a miniature golf course

in which Active Entertainment Inc., ("Active") was the losing party. Active retained Brownstein

to represent it in litigation against the third party with whom Active had contracted to build the

golf course. Dissatisfied with the damages awarded in that litigation, in 1999, Active brought a

legal malpractice suit against Brownstein in the Philadelphia Court of Common Pleas.  Fox

Rothschild LLP ("Fox Rothschild") acted as defense counsel for Brownstein in the malpractice

action.  After the lawsuit was filed, the parties agreed to submit to binding arbitration before

Thomas Rutter ("Rutter") and ADR; the Common Pleas case was discontinued in March 2002.

　　　　Before beginning the arbitration proceedings, the parties entered into a binding ADR

Options Arbitration Agreement, that provided, in relevant part:

> Each party and participating attorney has disclosed any past or present relationship
> with the arbitrator, direct or indirect, whether financial, professional, social or any
> other kind.  The arbitrator has also disclosed any past or present relationship with
> any party or attorney. It is understood that any doubt has been resolved in favor of
> disclosure.
>
> Pl's Am. Compl. ¶ 14 ("Arbitration Agreement and Stipulation").

　　　　The arbitration was conducted on June 16, 2003.  On September 19, 2003, Rutter issued a

decision in favor of Brownstein.  Thereafter, Great Western became the assignee of Active's

interest.  Subsequently, on March 17, 2011, Benjamin C. Weiner, the attorney for Great Western,

became the assignee of Great Western.  In that connection, Weiner seeks leave to amend the

action to name himself as an individual Plaintiff.

B.　　First Subsequent Action: Active Entertainment, Inc. v. Brownstein et al, October Term,
　　　　2003 ("2003 Petition Action")

　　　　On or around October 21, 2003, Great Western filed a Petition to Vacate the arbitration

award in the Court of Common Pleas, Philadelphia County.  In that action, Plaintiff alleged that

ADR had undisclosed conflicts of interest involving ADR and a Fox Rothschild attorney who

represented Brownstein in the 2003 arbitration.  Dougherty Cert., Ex. G.  Specifically, Plaintiff

alleges that this relationship should have been disclosed pursuant to the "Arbitration and Agreement Stipulation." Id. The petition to vacate the arbitration award was denied on December 18, 2003. Dougherty Cert., Ex. F. Plaintiff filed a motion for reconsideration, which was denied on January 16, 2004. Id.

Thereafter, on May 10, 2004, Plaintiff filed an appeal with the Superior Court of Pennsylvania. On September 22, 2005, the Superior Court affirmed. In its opinion, the Superior Court explained that the questions before it "concern[ed] an alleged violation by the arbitrator and Appellees' counsel of their ethical and contractual obligations to disclose that they had a prior relationship. Specifically, Active asserts that . . .defense counsel himself has a professional relationship with the arbitrator, which involves 'prior arbitrations and mediations' . . . Engaging in the practice of representing clients in cases subject to arbitration necessarily requires repeated appearances before attorneys serving as arbitrators, and it is not uncommon that one will encounter the same arbitrator. This is not the type of "relationship" that creates a conflict or is contemplated as requiring disclosure." Dougherty Cert., Ex. I. at 3-5.

In August 2006, the Supreme Court of Pennsylvania denied review. Dougherty Cert., Ex. F.


C.     Second Subsequent Action: Great Western Mineral & Mining Co. v. ADR Options, Inc. et al, Court of Common Pleas, Philadelphia County June Term 2005

While Active's appeal was pending before the Superior Court of Pennsylvania, Great Western filed a separate civil action in the Philadelphia Court of Common Pleas against, in relevant part, Rutter, ADR and Fox Rothschild. The Complaint alleged a failure to disclose

4

improper relationships and asserted various claims including: breach of contract, negligence, fraudulent inducement, fraudulent concealment, misrepresentation, false pretense, and unfair methods of competition/unfair or deceptive acts or practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  The basis for this lawsuit  was the "Arbitration Agreement and Stipulation" and the 2003 arbitration.  Dougherty Cert., Ex. K.

On May 25, 2006, the Court of Common Pleas dismissed the action as collaterally estopped by the 2003 action.  Dougherty Cert., Ex. L.  Specifically, the Court of Common Pleas explained that "[t]here is no denying that collateral estoppel bars Plaintiff from re-litigating its claims.  The issues are identical, the parties are the same, Plaintiff was afforded the opportunity to fully litigate its claim and there was a final judgment on the merits."  Id.

The Superior Court of Pennsylvania affirmed the decision and the Supreme Court of Pennsylvania denied Great Western's petition for appeal.


D.     Third Subsequent Action: Great Western Mining & Mineral Co. v. Fox Rothschild, LLP, No. 2:08-1093 (D.N.J. Feb. 29, 2008)

Thereafter, in February 2008, Plaintiff filed suit in the United States District Court for the District of New Jersey against, in relevant part, ADR Options, Fox Rothschild and Rutter.  In that action, Great Western asserted due process violations arising from the alleged breach of the "Arbitration Agreement and Stipulation" and 2003 arbitration pursuant to 28 U.S.C. § 1983. Dougherty Cert., Ex. N.  Specifically, Great Western alleged that defendants failed to "disclose essential information" to which it was "contractually entitled prior to it's [sic] acceptance of arbitrator Rutter," and that these claims were "part of a petition to vacate the arbitration award

and motion for reconsideration; both were denied." Id. ¶ 19.  Further, Great Western alleged that

it was deprived of due process concerning the failures to disclose because "[t]he judiciary was

beholden to the authority and influence of defendants ADR Options and Rutter." Id. ¶¶ 22, 23,

43.  The Honorable William H. Walls, United States District Judge, dismissed Plaintiff's

complaint for failure to state a claim.  Great Western Mining v. Fox Rothschild, No 08-1093,

2009 WL 704335 (D.N.J. Mar 16, 2009).

      Subsequently, Great Western filed a Motion for Reconsideration with Leave to Amend.

While this motion was pending, Great Western filed two subsequent Motions for Leave to

Substitute the Attached Complaint to Plaintiff's Motion for Reconsideration.  Importantly, and in

relevant part, on April 30, 2009, Plaintiff filed its first Motion to Substitute and attached a second

proposed amended complaint for the court's consideration.  In that motion, Great Western

asserted that it was only after the court had dismissed its complaint that Great Western

"discovered that ADR Options/Rutter had an attorney-client relationship with the defendant

before it during the underlying arbitration, and this information was withheld from Plaintiff. The

defendant was ADR Options/Rutters [sic] attorney and it was not disclosed to plaintiff."  Civ. A.

No. 08-1093, Dkt 23 at 2.  Similarly, the attached second proposed complaint asserted that "[t]he

defendant in the underlying arbitration [Vitale] was an attorney for ADR Options/Rutter and this

information was and has been withheld from plaintiff."  Id., ex. 3 ¶ 81.

      In addition, on June 16, 2009, Plaintiff filed a further Motion to Substitute and attached a

third proposed amended complaint for the court's consideration.  In that motion, Plaintiff

contended that Rutter was deposed on May14, 2009, and that during his deposition, Rutter

testified that some of the judges who ruled against Plaintiff and for ADR had "already

approached Rutter" regarding employment opportunities following their tenure on the bench. Dkt. 26-4 at 1.  In addition, Plaintiff attached a third proposed amended complaint that included not only the allegation regarding the attorney client relationship between Vitale and ADR/Rutter, 08-1093, Dkt. 26, Ex. 5 ¶ 82, but also the allegation that, based on the May 14 deposition of Rutter, "some of the judges who had ruled against Great Western and for ADR Options had already approached Rutter regarding the prospect of employment upon leaving the bench."  Great Western Mining v. Fox Rothschild, 615 F.3d at 163.

On June 24, 2009, Judge Walls denied Plaintiff's Motion for Reconsideration as well as the Motion for Leave to Amend.  Importantly, and in relevant part, in its opinion, the District Court noted that while it had considered the second proposed amended complaint, it did not consider the third proposed amended complaint.

Great Western appealed, and, the Third Circuit affirmed both the dismissal as well as the denial of Great Western's motion for leave to file a third amended complaint.  Specifically, the Third Circuit noted that Plaintiff's third proposed amended complaint contained the allegations that Vitale was an attorney for ADR Options and Rutter, as well allegations arising from Rutter's May 2009 deposition.  615 F.3d 159 n.2 & 178.  Despite these additional allegations, the Third Circuit affirmed the District Court's denial of the Motion for Reconsideration with Leave to Amend.  In that regard, the Third Circuit held that "[h]aving thoroughly considered all of Great Western's arguments in favor of reconsideration, we conclude that they are without merit."  615 F.3d 179 n. 9.

E.     Fourth Subsequent Action: Great Western Mining & Mineral Co. v. ADR Options, Inc.,
        Superior Court of New Jersey, Essex County

On December 16, 2008, during the pendency of the 2008 District Court action, Great

Western filed yet another suit against ADR in the Superior Court of New Jersey, Law Division,

Essex County based on the 2003 arbitration ("Essex County Action").  There, Great Western

alleged that it contracted with ADR to render professional services in connection with the legal

malpractice suit.  Chewning Ex., ¶ 3.  Great Western asserted claims for Breach of Contract,

Fraud, Misrepresentation, violation of the NJ Consumer Fraud Act and included a claim for

punitive damages.  This case was dismissed on September 18, 2009, upon a settlement by the

parties.  Chewning Cert., Ex. F.  Importantly, despite the fact that Rutter's deposition occurred in

May 2009, during the pendency of the Essex County action, Plaintiff made no attempt to amend

the complaint to include allegations regarding Vitale's role as an attorney for ADR and Rutter,

nor did Plaintiff attempt to amend the complaint to include information learned during Rutter's

May 2009 deposition.


F.     Fifth Action: The Present Action

Thereafter, on June 15, 2009, Plaintiff filed the instant lawsuit against ADR and

Brownstein. Plaintiff filed an Amended Complaint on or about November 9, 2009.   In this

action, Plaintiff asserts claims for Breach of Contract, Negligent Misrepresentation, Fraud,

Violations of the New Jersey Consumer Fraud Act, Violations of the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, and Punitive Damages.  Specifically, Plaintiff alleges,

in relevant part,  that Vitale represented ADR in 1997 in municipal court and in the Court of

8

Common Pleas but failed to disclose this relationship to Plaintiff. Amended Compl. ("Am. Compl.") ¶ 19. Moreover, Plaintiff contends that it did not discover this relationship until March 20, 2009. Am. Compl. ¶ 18. As a result, Plaintiff alleges that Rutter was not a neutral arbitrator and that Plaintiff suffered damages as a result. Id. ¶¶ 32-34. In addition, Plaintiff alleges that Mr. Brownstein and Mr. Vitale appeared as counsel in arbitrations before Rutter prior to the 2003 arbitration. Am. Compl. ¶¶ 20, 22. Plaintiff contends that it did not learn of this information until June 2009. Id.

On or about November 24, 2009, Defendants filed separate motions to dismiss this action on various grounds. On April 6, 2010, the Honorable Peter Sheridan, United States District Judge, declined to reach the merits because he granted Defendants' motions finding that venue in the District of New Jersey was improper and that transfer would not be in the interests of justice. Judge Sheridan also denied Plaintiff's subsequent motion for reconsideration.

Plaintiff appealed to the Third Circuit. On June 28, 2011, the Third Circuit reversed the dismissal, finding that the Brownstein and Vitale firm had not satisfied its burden of showing improper venue in this District and further commented upon the law firm's substantial ties to New Jersey and thus, that venue may have been proper in New Jersey. Indeed, the Third Circuit noted that, "[b]ased on the limited record before us, it appears that corporate Appellee Brownstein & Vitale has strong ties to the District of New Jersey. These contacts include: membership in the New Jersey State Bar, a substantial caseload in New Jersey courts, and an office in Cherry Hill, New Jersey." Great Western Min. & Mineral Co. v. ADR Options, Inc., 434 Fed. App'x 83 n.3 (3d Cir. June 28, 2011). The Third Circuit did not reach the merits of the case.

Importantly, although Plaintiff appears to have prevailed on the issue of whether venue was proper in this District before the Third Circuit, Plaintiff filed a Motion to Change Venue and for Transfer to the Eastern District of Pennsylvania (Dkt. 41) in this Court.  In addition, Plaintiff filed a Motion for Leave to file an Amended Complaint that, in relevant part, seeks to include additional instances in which Vitale represented ADR in the Municipal Court in Philadelphia.  In addition, Plaintiff seeks leave to amend the complaint to name counsel for Plaintiff,  Benjamin C. Weiner, as an individual Plaintiff based on a March 2011 assignment from Great Western.  Defendants have filed separate Motions to Dismiss or, in the Alternative, for Summary Judgment as well as Cross- Motions for Sanctions.  All these motions are currently pending before this Court.[1]

G. Sixth Action: Weiner v. Brownstein & Vitale et al, March Term 2011

Despite the pendency of this action, in August 2011, Plaintiff filed yet another new case in the Philadelphia Court of Common Pleas against ADR and Brownstein, among others.  The allegations contained in the Second Amended Complaint filed in that action are nearly identical to those pending before this Court.  Specifically, Plaintiff asserted claims for Breach of Contract, Negligent Misrepresentation, Fraud, Intentional Misrepresentation and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

## II. PLAINTIFF'S MOTION TO CHANGE VENUE

---

[1]In addition, the Court notes that in October 2011, following the filing of all these motions, Plaintiff moved for the recusal of Judge Sheridan and this case was transferred to me on October 25, 2011.

In the instant matter, Plaintiff has filed a Motion to Change Venue pursuant to 28 U.S.C. § 1404(a).   Specifically, Plaintiff seeks to transfer this action from the District of New Jersey, where it was initially filed, to the Eastern District of Pennsylvania "for the convenience of the parties and witnesses, and in the interests of justice."  Pl's Br. (Dkt. 41) at 1.   In response, Defendants argue that Plaintiff has failed to demonstrate the requisite change in circumstances to warrant a transfer and that Plaintiff has failed to establish its burden that transfer is appropriate. ADR Br. (Dkt. 49) at 5, 7.  The Court agrees.

 As a threshold matter, "[a] plaintiff seeking to transfer the venue of an action pursuant to § 1404 typically must demonstrate a change in circumstance that has occurred since the filing of the action which warrants a change of venue."  Rappoport v. Steven Speilberg, Inc., 16 F. Supp. 2d 481, 501 (D.N.J. 1998); see also Jennings v. Entre Computer Centers, Inc., 660 F.Supp. 712, 715 (D.Me.1987); Cremin v. Canadian National Railway Corp., No. 84-8770, 1986 WL 4065, at *3 (S.D.N.Y. Apr. 3, 1986); Fothergill v. Parker, No. 83-963, 1984 U.S.Dist. LEXIS 16285, at *6 (D.Mass. May 30, 1984); James v. Daley & Lewis, 406 F.Supp. 645, 648 (D.Del.1976); Harry Rich Corp. v. Curtiss-Wright Corp., 308 F.Supp. 1114, 1118 (S.D.N.Y.1969); Roberts Bros., Inc. v. Kurtz Bros., 231 F.Supp. 163, 167 (D.N.J.1964); Leyden v. Excello Corp., 188 F.Supp. 396, 397 (D.N.J.1960).

Here, Plaintiff has offered little, if anything, to suggest that any circumstances have changed since it filed this action that would warrant its transfer to the Eastern District of Pennsylvania.  In fact, the opposite appears to be true.  As noted above, in November 2009, Defendants filed motions to dismiss this action based, in relevant part, on the argument that venue in New Jersey was improper and that the case should have been brought in the Eastern

District of Pennsylvania.  Judge Sheridan agreed with Defendants and dismissed the case holding that venue was improper in New Jersey.  Plaintiff appealed this decision to the Third Circuit arguing, in part, that venue was proper in New Jersey.  The Third Circuit agreed and remanded the matter to this Court.

Despite prevailing on the issue of venue in the Third Circuit, Plaintiff has now performed a complete about face arguing, for the first time, that venue is not proper in New Jersey.  However, the only changed circumstance that Plaintiff points to in support of his motion is Judge Sheridan's "strongly worded opinion" that venue in New Jersey was not proper.  Pl's Rep. at 3 (Dkt. 58).  Plaintiff's position is untenable.  Plaintiff has offered nothing to support the proposition that a judicial decision constitutes a changed circumstance.  Moreover, even if Judge Sheridan's decision concerning venue could be considered a changed circumstance, the Judge's determination regarding venue was vacated by the Third Circuit.  Indeed, the Third Circuit ruled that venue in New Jersey was, likely, proper.  In light of Plaintiff's reliance on a vacated District Court Opinion, and in the absence of anything else that could conceivably comprise a change in circumstances, the Court denies Plaintiff's Motion to Change Venue.

## III.    DEFENDANTS' CROSS-MOTIONS FOR SANCTIONS

In response to Plaintiff's Motion to Change Venue, Defendants filed separate Cross-motions for Sanctions Pursuant to 28 U.S.C. § 1927[2].   Specifically, Defendants argue that

_____

[2]The Court notes that although Defendants only moved for sanctions in response to the Motion to Change Venue, the filing of this entire action by Plaintiff and Weiner appears vexatious and unreasonable and seems to have been filed for the sole purpose of unnecessarily multiplying the proceedings.  That said, the Court, in its discretion, will refrain from entering additional sanctions and will limit the sanctions to those requested by Defendants.

Plaintiff's motion was filed vexatiously and for the sole purpose of multiplying these proceedings.  Moreover, Defendants contend that the motion created unnecessary costs and expenses for Defendants and that it was filed in bad faith.  Brownstein Br. (Dkt. 52-1) at 8-10; ADR Br. (Dkt 49) at 13-14.   The Court agrees.

Section 1927 provides, in relevant part, that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "Although a trial court has broad discretion in managing litigation before it, the principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." Zuk v. Eastern Pennsylvania Psychiatric Institute, 103 F.3d 294, 297 (3d Cir.1996) (citation and internal quotations omitted).

As evidenced by the text of the statute, section 1927 requires a court to find an attorney has: (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct. Williams v. Giant Eagle Markets, Inc. 883 F.2d 1184, 1191 (3rd Cir.1989). "[B]efore a court can order the imposition of attorneys' fees under § 1927, it must find willful bad faith on the part of the offending attorney." Zuk, 103 F.3d at 297. "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment."  Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. of Teachers, AFL-CIO, 829 F.2d 1370, 1375 (6th Cir.1987).  Importantly, sanctions imposed under § 1927 must only impose costs and expenses

13

that result from the particular misconduct.  Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir.1995).
Moreover, these costs and expenses are limited to those that could be taxed under 28 U.S.C. §
1920. Id.

Applied here, the Court finds that in light of Plaintiff's Motion to Change Venue,
sanctions are warranted.  As discussed above, Plaintiff initially filed this action in the District of
New Jersey.  Indeed, Plaintiff opposed Defendants' initial round of motions to dismiss which
were based, in part, on the argument that venue in New Jersey was not proper and that the case
should have been brought in the Eastern District of Pennsylvania.  In fact, Plaintiff appealed the
District Court's decision holding that venue was not proper in New Jersey, and Plaintiff prevailed
on that issue in the Third Circuit.  At this juncture, and despite the fact that the Third Circuit
agreed with Plaintiff that venue appeared proper in New Jersey, Weiner, as assignee of Great
Western, seeks to transfer this action to the Eastern District of Pennsylvania.  Moreover,
Weiner's sole reason for seeking  to transfer the action to the Eastern District of Pennsylvania
amounts to concerns expressed by Judge Sheridan that venue in New Jersey is not proper.
However, the Third Circuit vacated Judge Sheridan's decision regarding venue and held that
venue in New Jersey was, likely, proper.   It is axiomatic that an opinion that has been vacated by
the Third Circuit has little merit.  For these reasons, the Court finds that Weiner's Motion to
Change Venue was meritless and that this filing intentionally and unnecessarily multiplied
proceedings in an unreasonable and vexatious manner, thereby increasing the cost of the
proceedings for Defendants.  Thus, the Court will require Weiner to bear the reasonable costs and

14

expenses Defendants incurred in filing responses to the Motion to Change Venue and in filing

Cross-Motions for Sanctions.[3]


## IV.     DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In addition to the above motions, both ADR and Brownstein have filed separate Motions

to Dismiss, or, in the Alternative for Summary Judgment.  Specifically, Defendants contend, in

relevant part, that Plaintiff's claims are barred by Res Judicata, Collateral Estoppel and the Entire

Controversy Doctrine.[4]


A.     Standard of Review

When reviewing a motion to dismiss, courts "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and determine whether, under

any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v.

County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell

Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6)

standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S.

---

[3]In that regard, and as set forth in the corresponding Order, Defendants are directed to file certifications within 30 days setting forth costs and expenses incurred in the filing of their opposition to Plaintiff's Motion to Change Venue as well as costs and expenses incurred in the filing of their Cross-Motions for Sanctions.

[4]The Court notes that Defendants moved to dismiss this matter for various other reasons; because the Court finds that Plaintiff's claims are barred by Res Judicata, Collateral Estoppel and the Entire Controversy Doctrine, the Court need not consider Defendants' additional arguments.

41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the following principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949  (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. At 1949 (quoting Twombly, 550 U.S. at 556). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211. In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public

record, and undisputedly authentic documents if the complainant's claims are based upon these documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  In that regard, because the documents submitted in connection with Defendants' motions are pleadings prepared by Plaintiff and other judicial documents well within the scope of Plaintiff's Amended Complaint,  the Court need not convert Defendants' motions into motions for summary judgment and will, instead, consider these motions pursuant to Fed. R. Civ. P. 12(b)(6).

B. Discussion

Because the Court finds Defendants' arguments regarding res judicata, collateral estoppel and the entire controversy doctrine to be dispositive, the Court will delineate these concepts below.

1. Res Judicata and Collateral Estoppel

Res judicata is an affirmative defense.  Such a defense is grounds for a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). "Res judicata encompasses two preclusion concepts – issue preclusion, which forecloses litigation of a litigated and decided matter often referred to as direct or collateral estoppel), and claim preclusion, which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit."  Bierley v. Dombrowski, 309 Fed. App'x 594, 596-7 (3d Cir. 2009).

Collateral estoppel prevents parties or their privies from re-litigating an issue if a court possessing personal and subject matter jurisdiction has already delivered a valid, final judgment

on the merits.  Witkowski v. Welch, 173 F.3d 192, 198-99 (3d Cir. 1999).  The doctrine applies if four requirements are met: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it[was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  In re G-I Holdings Inc., No 02-3082, 2003 U.S. Dist. LEXIS 16317, at *6 (D.N.J. Aug. 8, 2003) (citations omitted).  The purpose of the collateral estoppel doctrine is to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to repeatedly relitigate the same issues in multiple lawsuits.  Allen v. McCurry, 449 U.S. 90, 94 (1980).

Res judicata, or claim preclusion, is a broader doctrine than collateral estoppel.  It applies not only to claims brought in a previous lawsuit, but also to claims that could have been brought in that suit.  CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir.1999).  The doctrine attaches if there has been: (1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action.  Mullarkey v. Tamboer, 536 F.3d 215, 225 (3d Cir. 2008)(citations omitted).  Under New Jersey law, "[a] dismissal with prejudice 'constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.'"  Feinsod v. Noon, 261 N.J. Super. 82, 84 (App. Div. 1992)(citations omitted).


2. Entire Controversy Doctrine

The entire controversy doctrine is New Jersey's own, distinctive application of res judicata principles.  It "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at

the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Kozyra v. Allen, 973 F.2d 1110, 1111 (3d Cir. 1992)(citations omitted). The doctrine is meant to encourage a final, comprehensive adjudication of a legal controversy, provide fairness to all involved parties (including prospective parties), and preserve judicial resources by avoiding fragmented litigation. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322 (1995). "It is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." Id. at 323. "While the wellspring of res judicata or collateral estoppel is the notion of finality of a court's adjudication, the entire controversy doctrine is designed to prevent the fragmentation of litigation and applies even when the first case adjudicates an issue different from the second." Fioriglio v. City of Atlantic City, 963 F. Supp. 415 420 (D.N.J. 1997). New Jersey Courts apply the entire controversy doctrine as a bar to a subsequent suit when there is some duplication of proof involved. "For instance . . . forcing the two claims to be brought at the same time 'would have resulted in a more comprehensive determination of the underlying legal controversy.'" Fields v. Thompson Printing Co., 363 F.3d 259, 266 (3d Cir. 2004)(citations and quotations omitted). The Full Faith and Credit Act, 28 U.S.C. § 1738, obliges federal courts to apply New Jersey's Entire Controversy Doctrine when hearing federal causes of action. Rycoline Prods., 109 F.3d 887; Dowdell v. University of Med. & Dentistry, 94 F. Supp. 2d 527, 535 (D.N.J. 2000).

There are, however, exceptions to the doctrine's application. "The doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." Mystic Isle Dev. Corp., 142 N.J. at 323. Moreover, the New Jersey Supreme Court has

held that the entire controversy doctrine should not be applied when "joinder would result in significant unfairness [to the litigants] or jeopardy to a clear presentation fo the issues and just result." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 354-55 (1984). "However, joinder is not a matter of party autonomy. It is for [a] trial court to determine whether or not joinder is appropriate in a given case, and thus litigants should be compelled to bring all actions at one time." Mystic Isle Dev. Corp., 142 N.J. at 324. Thus, "[a] plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later." Id.

3. Analysis

　　In the instant matter, Defendants initially contend that Plaintiff's claims are barred by res judicata and collateral estoppel. Specifically, Defendants argue that: (1) because Great Western was in possession of all the information giving rise to the instant action during the pendency of the first action in the District of New Jersey, it should have asserted its current claims in the context of that action, and is barred from asserting those claims here; and (2) Great Western's claims in the Pennsylvania Superior Court actions concerned ADR's participation in the 2003 arbitration and the allegation that ADR failed to disclose certain conflicts, thus, this action is barred by res judicata. In addition, Defendants contend that because the Essex County action was not dismissed until September 2009, four months after Plaintiff allegedly learned of the information giving rise to the instant action, Plaintiff should have amended his Complaint in that court and is barred by the entire controversy doctrine from asserting those claims here. The Court agrees.

20

a.  Collateral Estoppel and Res Judicata Analysis

As discussed above, collateral estoppel applies when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it[was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  In re G-I Holdings Inc., No 02-3082, 2003 U.S. Dist. LEXIS 16317, at *6 (D.N.J. Aug. 8, 2003) (citations omitted).  In the instant matter, the Court notes that following Judge Walls' dismissal of Plaintiff's Complaint in the 2008 District of New Jersey action, Great Western filed three separate complaints in support of a motion for leave to amend.  Specifically, on April 30, 2009, Plaintiff filed a second proposed amended complaint that included allegations concerning an alleged attorney-client relationship between ADR and Mr. Vitale.  Civ. A. No. 08-1093, Dkt. 23, Ex. 3 ¶ 81.   This is the exact same allegation at issue before this Court.  Am. Compl.  ¶¶ 18-19.   Moreover, in dismissing Plaintiff's motion for reconsideration and leave to amend, Judge Walls expressly considered Plaintiff's proposed second proposed amended complaint.  Civ. A. No. 08-1093, Dkt. 27.  Furthermore, in its opinion, the Third Circuit expressly considered the allegations contained in Plaintiff's proposed second amended complaint and affirmed Judge Walls' denial of the Motion for Reconsideration as well as for Leave to Amend.  Great Western Mining, 615 F.3d at 179 n.9.  Because both Judge Walls and the Third Circuit expressly considered the claims regarding an alleged attorney client relationship between ADR and MR. Vitale, Plaintiff is collaterally estopped from asserting those claims in this action.

Moreover, to the extent that Plaintiff attempts to argue that because he only asserted a section 1983 cause of action based on the alleged attorney-client relationship between Vitale and ADR before Judge Walls, he should not be precluded from asserting additional causes of action

arising from that relationship in this action, Plaintiff is wrong.  The doctrine of res judicata bars subsequent lawsuits where there has been: (1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action.  Mullarkey v. Tamboer, 536 F.3d 215, 225 (3d Cir. 2008)(citations omitted).   Indeed, it is well-established that res judicata applies not only to claims brought in a previous lawsuit, but also to claims that could have been brought in that suit.  CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir.1999).  Although Plaintiff chose to only assert a section 1983 cause of action before Judge Walls, this does not change the fact that Plaintiff was required to plead all plausible causes of action that could arise from the same set of facts in that action.  See, e.g., Duhaney v. Attorney General of U.S., 621 F. 3d 340, 348 (3d Cir. 2010)("our approach reflects the 'present trend ... of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence'. . .Under this transactional approach, the focus of the inquiry is 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.' "(citations and quotations omitted).   Thus, res judicata bars Plaintiff from asserting any claims arising out of the alleged attorney client relationship between Vitale and ADR.

　　　Similarly, to the extent that Plaintiff 's Complaint seeks an adjudication of facts arising out of Rutter's 2009 deposition, Plaintiff is barred from asserting them here.  Indeed, it is undisputed that Plaintiff filed a proposed third amended complaint before Judge Walls that included information arising out of Rutter's 2009 deposition.   Thus, Plaintiff was in possession of all the information giving rise to the instant action during the pendency of the first action in

the District of New Jersey.  As a result, Plaintiff should have asserted those claims in the context

of that action.  In that regard, the Court notes that while Judge Walls refused to consider

Plaintiff's third proposed amended complaint, the Third Circuit expressly considered the third

proposed amended complaint and affirmed Judge Walls' dismissal of the action as well as the

motion for reconsideration.  See Great Western Mining, 615 Fl3d 179 n.9.  Indeed, the Third

Circuit expressly held that "having thoroughly considered all of Great Western's arguments in

favor of reconsideration, we concluded that they are without merit."  Id.  As a result, the doctrine

of res judicata precludes Plaintiff from asserting claims arising out of Rutter's 2009 deposition.

However, even beyond the prior action in the District of New Jersey, it is clear that

Plaintiff's claims in this action are barred by his prior actions in the Pennsylvania Courts.

Specifically, Plaintiff's 2003 Petition Action in the Court of Common Pleas and the March 2011

Motion to Reopen Judgment in that action were based on the neutrality of the 2003 arbitration.

Dougherty Cert., Exs. H, S.  Moreover, these actions reached a final judgment on the merits.

Dougherty Cert.,  Exs. I, T.   For these reasons, the Court finds that the instant action is barred by

the doctrines of res judicata and collateral estoppel.

b. Entire Controversy Doctrine

Finally, the Court notes that even if this action were not precluded by res judicata or

collateral estoppel, Plaintiff's claims are clearly barred by New Jersey's entire controversy

doctrine.  It is well-established that while the entire controversy doctrine does not bar claims that

"are unknown, unarisen, or unaccrued at the time of the original action,"  Mystic Isle Dev. Corp.,

142 N.J. at 323, "[i]t is for [a] trial court to determine whether or not joinder is appropriate in a

given case, and thus litigants should be compelled to bring all actions at one time." <u>Mystic Isle</u>

<u>Dev. Corp.</u>, 142 N.J. at 324.  Thus, "[a] plaintiff who fails to allow the trial court the opportunity

to supervise the entire controversy risks losing the right to bring that claim later."  <u>Id</u>.

Applied here, in December 2008, Plaintiff filed an action in the Superior Court of New

Jersey, Essex County, based on the 2003 arbitration.  The case was dismissed on September 28,

2009, more than four months after Rutter's deposition and seven months after Plaintiff allegedly

learned of the alleged attorney client relationship between Vitale and ADR.  Despite the fact that

Plaintiff clearly was in possession of the information giving rise to the instant action during the

pendency of the Essex County action, Plaintiff did not attempt to amend the complaint to include

this information.  Thus, Plaintiff's claims are barred by the entire controversy doctrine.

## V.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Finally, on September 9, 2011, Plaintiff filed a Motion for Leave to File a Second

Amended Complaint.[5]  Federal Rule of Civil Procedure 15 governs amendments of the pleadings.

Rule 15(a) states that a party may amend her pleading "once as a matter of course ... before being

served with a responsive pleading." Fed.R.Civ.P. 15(a). At all other times, "[t]he court should

freely give leave when justice so requires."  <u>Id</u>. The decision to grant leave to amend is left

within the discretion of the district court.  <u>United States v. Diversified Environmental Groups,</u>

<u>Inc.</u>, 1990 U.S. Dist. LEXIS 17044, *1, 1990 WL 209326 (E.D.Pa.1990) (citing <u>Coventry v. U.S.</u>

---

[5]To the extent that Plaintiff contends that this Court should grant leave to amend pursuant to Fed. R. Civ. P. 17(a)(3) to name Benjamin C. Weiner as the real party in interest, for the reasons set forth in this Opinion, and in light of the dismissal of this action, the Court finds that such amendment would be futile.

24

Steel Corp., 856 F.2d 514, 518-521 (3d. Cir.1988)).  Courts have a liberal tendency in granting

leave to amend, because the pleading is not "a game of skill in which one misstep by counsel

may be decisive to the outcome." Unites States v. Hougham, 364 U.S. 310, 317, 81 S.Ct. 13, 5

L.Ed.2d 8 (1960).  Further, the Supreme Court has stated that "outright refusal to grant the leave

without any justifying reason appearing for the denial is not an exercise of discretion; it is merely

abuse of the discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis,

371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason-such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, futility of amendment, etc.,-the leave sought should, as the rules required, be

freely given." Id. In Winer Family Trust v. Queen, 503 F.3d 319, 330-331 (3d Cir.2007), the

Third Circuit held that even though "leave should be 'freely given when justice so requires,' ... 'a

District Court may deny leave to amend on the grounds that amendment would cause undue

delay or prejudice, or that amendment would be futile.' " (internal citations omitted).

In this case, Plaintiff alleges that on April 20, 2011, it discovered for the first time that

between October 1996 and June 1999  "Vitale . . . represented ADR Options" in two additional

cases before the Municipal Court of Philadelphia.  Second Am. Compl. ¶¶ 24, 25.  In addition,

Plaintiff contends that in April 2010, it learned that Vitale had appeared in an arbitration before

Rutter "only 11 days before appearing before Rutter as a defendant."  Second Am. Compl. ¶ 36.

As a result of this "newly discovered evidence," Plaintiff filed the instant Motion for Leave to

File a Second Amended Complaint.  In response, Defendants contend that the Court should deny

Plaintiff's motion to amend as futile.  Specifically, Defendants argue that Plaintiff's amended complaint is barred by the doctrine of res judicata.  The Court agrees.

Initially, with regard to the "newly discovered" allegations that Vitale had appeared in an arbitration before Rutter "only 11 days before appearing before Rutter as a defendant," such allegations are barred by the doctrine of res judicata.  As discussed above, in the 2003 Petition Action, the Superior Court of Pennsylvania expressly ruled on similar conflicts of interest and determined that "[e]ngaging in the practice of representing clients in cases subject to arbitration necessarily requires repeated appearances before attorneys serving as arbitrators, and it is not uncommon that one will encounter the same arbitrator.  This is not the type of "relationship" that creates a conflict or is contemplated as requiring disclosure."  Thus, not only are these claims barred as res judicata, but in light of the Superior Court's determination regarding these exact types of alleged conflicts, the Court finds that any amendment to add these allegations would fail to state a claim and, therefore, such an amendment would be futile.  See, e.g., Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1992) (holding that a "trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

Moreover, to the extent that Plaintiff now seeks to amend the Complaint to add two additional instances in which Vitale allegedly represented ADR before the Municipal Court of Philadelphia, Second Am. Compl. ¶ 24, Plaintiff is barred by the doctrine of res judicata.  It is well established that res judicata bars not only claims that were raised in a previous proceeding but also claims that could have been raised.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  As discussed above, Plaintiff filed a second proposed amended complaint before Judge Walls that included two instances in which Vitale allegedly represented ADR in the

26

Municipal Court.  Judge Walls denied Plaintiff's motion for reconsideration and motion for leave

to amend based on these allegations.  The Third Circuit affirmed.  Because the same exact type

of factual allegation was at issue before Judge Walls and the Third Circuit, Plaintiff was required

to plead all causes of action that could arise out of those facts in that action.  Duhaney, 621 F.3d

at 348.  The mere fact that Plaintiff only chose to assert a cause of action under 28 U.S.C. § 1983

does not change the fact that he was required to plead all plausible causes of action that could

relate to that set of facts.  Id.  Moreover, in light of Judge Walls' determination that these facts

failed to state a claim, the Court finds that any amendment to add additional identical facts would

be futile.   See, e.g., Massarsky v. General Motors Corp., 706 F.2d at 125.  Whether Vitale

represented ADR before the municipal court two, four, or six thousand times does not change the

fact that Plaintiff is barred from asserting claims arising from the same alleged conflict of interest

here.[6]

Ultimately, Plaintiff and Plaintiff's counsel, assignee, Benjamin C. Weiner, must face the

fact that "enough is enough."  They have plagued numerous courts with the same or similar

---

[6]In addition, the Court is compelled to comment on the dilatory nature of the "newly
discovered evidence" that Plaintiff seeks to incorporate via the instant Motion to Amend.
Specifically, the Court notes that Plaintiff seeks to add additional instances in which Vitale
allegedly represented ADR in the Municipal Court that date back to, at the latest, 1999, i.e.
nearly 15 years ago.  However, nothing before me suggests that, with any due diligence, Plaintiff
could not have discovered these alleged additional representations earlier in any of the numerous
litigations Plaintiff filed relating to the 2003 arbitration.  Thus, the Court finds that Plaintiff's
attempt to add allegations concerning representations that occurred almost 15 years ago are the
picture of undue delay and prejudice to the defendant.  See, e.g., Candelaria v. Erickson, 01-
8594, 2007 WL 1793443, at *3 (S.D.N.Y. June 18, 2007)("[N]ewly discovered evidence does
not preclude the application of res judicata unless the evidence was either fraudulently concealed
or could not have been discovered in a timely manner by due diligence."); Bosley v. The Chubb
Institute, 516 F. Supp. 2d 479, 486-87. (E.D. Pa. 2007).

allegations for more than a decade.  It is staggering to consider the resources expended by the various parties, judges, and judicial venues that have all come to the same conclusion.  Plaintiff and Mr. Weiner have to face the music and finally put an end to their unrelenting pursuit of Defendants related to an arbitration conducted years ago.  The policies underlying res judicata, collateral estoppel and the entire controversy doctrine resonate here.  This case compels a finding of finality.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Change Venue and Motion for Leave to Amend are DENIED.  In addition, Defendants' Motions for Cross-Sanctions and Motions to Dismiss are GRANTED.

Dated: February 7, 2012                              /s/ Freda L. Wolfson_____

                                                              Freda L. Wolfson, U.S.D.J.