*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| GREAT WESTERN MINING & | : | |
| MINERAL COMPANY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 09-2907 (FLW) |
| | : | |
| v. | : | |
| | : | __OPINION__ |
| ADR OPTIONS, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

__WOLFSON__, District Judge:

This case arises out of a long history of litigation regarding an alleged legal malpractice action initially commenced in the Philadelphia Court of Common Pleas in 1999. In the present action before this Court, Plaintiff Great Western Mining & Mineral Co. ("Plaintiff"), through its counsel Benjamin C. Weiner, Esq., filed suit against defendants ADR Options, Inc ("ADR"), Brownstein and Vitale, P.C., and Brownstein, Vitale & Weiss, P.C. ("Brownstein") (collectively, "Defendants"), alleging that Defendants failed to disclose certain relationships prior to a 2003 arbitration arising from the aforementioned malpractice. Plaintiff filed numerous motions in this case, which the Court disposed of in an opinion and corresponding order dated February 7, 2012 ("February Opinion"). In the February Opinion, the Court, inter alia, granted Defendants' cross-motions for sanctions against Plaintiff's counsel, pursuant to 28 U.S.C. § 1927, and in that connection ordered counsel for Defendants to certify in accordance with L. Civ. R. 54.2 fees,[1]

---

[1]Although that order and related opinion did not explicitly use the term "fees," as I

(continued...)

costs, and expenses incurred in successfully opposing Plaintiff's motion to change venue and in preparing and opposing their cross-motions for sanctions. Accordingly, the sole remaining issue in this case, and the matter presently before the Court, is the determination of the reasonable amount of sanctions Plaintiff's counsel owes to Defendants.

## I. BACKGROUND

The Court recently reviewed and summarized the background of this case in its February Opinion. Because the parties know well the long and tortured history of this case, and because there have been no relevant, intervening circumstances altering that background, the Court finds it unnecessary to repeat the history of the case in the instant opinion beyond the following. The February Opinion concluded that, pursuant to 28 U.S.C. § 1927, Plaintiff's counsel should pay Defendants costs and expenses incurred in responding to Plaintiff's motion to change venue and in preparing cross-motions for sanctions. The February Opinion reasoned that Plaintiff's motion to change venue unreasonably and vexatiously multiplied the proceedings in the case by virtue of Plaintiff taking a position before this Court diametrically opposed to Plaintiff's previous position in an appeal before the Third Circuit.

Subsequently, counsel for Defendants timely filed their certifications in March 2012, in accordance with the February Opinion, to which Plaintiff timely filed an objection. On September 25, 2012,[2] the Court, sua sponte, sent a letter to the parties informing them that a

---

[1](...continued)
explain infra, footnote 3, the Court subsequently clarified that the sanctions amount included an award of attorney fees.

[2]As the Court explained in its letter, the delay in resolving this matter was due to an administrative oversight.

decision would be forthcoming, responding in part to Plaintiff's objection to attorney fees,[3] and granting the parties leave to file additional affidavits attesting to prevailing market billing rates in the community.

## II. DISCUSSION

### A. Defendants' Compliance with Local Civil Rule 54.2

Before proceeding to the amount of attorney fees, I must address Plaintiff's argument that the certifications of counsel for Defendants do not satisfy Local Civil Rule 54.2 ("Rule 54.2"). Specifically, Plaintiff claims that the certifications include no description of fee agreements or amounts paid by the clients, and therefore they do not comply with part (b) of that rule, which requires that "[a]pplications for the allowance of counsel fees shall include an affidavit describing all fee agreements and setting forth both the amount billed to the client for fees and disbursements and the amount paid." Plaintiff's argument in this regard is misplaced. The Court already has awarded attorney fees to Defendants as sanctions against Plaintiff's counsel. Therefore, Rule 54.2(b) is inapplicable to the present matter because there is no "application" for attorney fees. Rather, all that remains for the Court in this case is the amount of those fees. The only applicable portion of Rule 54.2 is part (a), which specifies the contents of affidavits that must be filed when "a counsel fee [has been] allowed by the Court . . . ." Plaintiff does not contest Defendants' compliance with Rule 54.2(a) and the Court finds that the certifications

---

[3]Specifically, the Court addressed Plaintiff's objection that the request for attorney fees was not properly before the Court on the basis that the February Opinion only ordered costs and expenses and not legal fees. I rejected Plaintiff's objection, clarifying that, to the extent the February Opinion was unclear, Plaintiff's sanctions include the amount of Defendants' reasonable attorney fees pursuant to 28 U.S.C. § 1907. Defendant has not further challenged the award of attorney fees, only the reasonableness of the amount sought.

comply with Rule 54.2(a).

Having disposed of this argument, the Court now turns to the reasonableness of the fees and expenses requested by counsel for Defendants, as set forth in their certifications, as well as Plaintiff's corresponding objections.

**B. Calculation of Attorney Fees and Expenses**

The starting point for an award of attorney fees is to calculate the "lodestar" amount, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983); Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  "The party seeking attorneys' fees has the burden to prove that its request is reasonable. To meet its burden, the fee petitioner must submit evidence to support the hours and billing rates it claims." Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 374 (3d Cir. 2004) (citations omitted).  Significantly, "[w]hen the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 564, 106 S.Ct. 3088 (1986) (internal quotation omitted).  "The district court cannot decrease a fee award based on factors not raised at all by the adverse party . . ." and "[o]nce the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotation marks omitted).

"In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."

4

Maldonado, 256 F.3d at184-85 (internal quotation marks omitted).  Additionally, "[a] reasonable hourly rate is calculated according to the prevailing market rates in the community.  An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive." Potence, 357 F.3d at 374 (citation omitted).  "[T]he court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Rode, 892 F.2d at 1183.

As noted at the outset of this opinion, counsel for both ADR and Brownstein filed several certifications setting forth the costs, expenses, and attorney fees they incurred in successfully opposing Plaintiff's motion to change venue and in preparing and opposing cross-motions for sanctions.  Plaintiff filed an objection to the reasonableness of hours and rates only with regard to counsel for ADR.  I address the reasonableness of the attorney fees claimed by counsel for ADR first.

1. ADR

ADR submitted two certifications, with exhibits, from its counsel, Kerri E. Chewning, Esq., setting forth the attorney fees incurred by Chewning in opposing Plaintiff's motion to change venue and in preparing and opposing ADR's cross-motion for sanctions.  As required, I address the reasonableness of Chewning's hourly rate separately from the reasonableness of her hours requested.

Chewning listed her hourly rate at $275 through September 30, 2011, and at $300 thereafter.  In describing the reasonableness of her hourly rate, Chewning certified that she is a senior associate at her firm, having been a litigation attorney in private practice for ten years and

having served previously as a law clerk to a United States District Judge.  Chewning averred that

her hourly rates are "consistent with the hourly rates charged by attorneys at similar litigation

firms with similar experience in this geographic region engaged in this type of commercial

litigation."  Chewning March Cert. at para. 10.  Chewning attested further that her hourly rates

are consistent with the rates approved by the Third Circuit, citing Jama v. Esmor Corr. Svcs., 577

F.3d 169, 181 (3d Cir. 2009), which affirmed a district court's award of rates that "ranged from

$600 for a partner to $205 for a first-year associate, and $400 for . . . [an attorney from] the

Rutgers Constitutional Litigation Clinic."  See Chewning Oct. Cert. at para. 7.[4]  Chewning also

submitted an affidavit from Suzanne I. Turpin, Esq., an attorney with substantial commercial

litigation experience in the region.  Turpin attested that Chewning's rates were "well within the

range of the prevailing market billing rates for this geographical region, for this type of case and

for a litigator with Chewning's experience."  Chewning Oct. Cert. at Ex. A.

     In response, Plaintiff asserts that Chewning's rates are excessive, and challenges

Chewning's reliance on both the Jama case and the Turpin affidavit.[5]  Specifically, Plaintiff

---

[4]Chewning also stated in her supplemental certification that her rates were consistent with those identified by the 40th Annual Survey of Law Firm Economics.  See Chewning Oct. Cert. at para. 5.  As Plaintiff notes, however, Chewning did not provide a copy of this survey.  Because I cannot verify this evidence, I do not consider it in determining Chewning's reasonable hourly rate.

[5]In addition to objecting to the reasonableness of the fees, Plaintiff argues that the billing records contained in Chewning's March certification have been altered, and thus it is impossible to ascertain what was actually billed to the clients.  Plaintiff's argument is misplaced because Chewning averred that the records are legitimate records that have been redacted for the sole purpose of reducing the amount of hours claimed as fees.  Chewning March Cert. at para. 12-13.  In other words, Chewning's redactions benefit Plaintiff.  I accept Chewning's representations that the records have been accurately reduced where necessary, and I reject Plaintiff's argument in this regard.

argues that <u>Jama</u> is distinguishable because that case concerned the Alien Tort Claims Act, and

therefore required unusual legal expertise that was not required by the present case.  Similarly,

Plaintiff argues that the Turpin affidavit fails to demonstrate that Chewning's hourly rate is

reasonable because it is not "based on the essential character and complexity of the services

rendered."  <u>See</u> Pl. Supp. Opp. at para. 12.  In rejecting Chewning's proposed hourly rate,

Plaintiff contends instead that Chewning's rate should be the same rate requested by counsel for

Brownstein – <u>i.e.</u>, $165 per hour for an associate.  Plaintiff's arguments in this regard are

misplaced.

      First, <u>Jama</u> was principally a First Amendment case brought under the Religious Freedom

Restoration Act.  <u>See Jama</u>, 577 F.3d at 172 & n.5.  Contrary to Plaintiff's contention, the Third

Circuit did not state anywhere that the reasonableness of fees in that case turned on any "unusual

legal expertise."   In any event, even if <u>Jama</u> is inapplicable, there are a plethora of cases in this

district that support the reasonableness of Chewning's requested hourly rates.  This Court in

particular has previously awarded fees to attorneys in this region engaged in commercial

litigation matters at or above the hourly rates requested by Chewning.  <u>E.g.</u>, <u>Conklin v. Pressler</u>

<u>& Pressler, LLP</u>, No. 10-3566, 2012 WL 569384, at *5 (D.N.J. Feb. 21, 2012); <u>Ellis v. Ethicon,</u>

<u>Inc.</u>, No. 05-0726, 2010 WL 715403, at *2 (D.N.J. Mar. 1, 2010); <u>see also</u> <u>Holliday v. Cabrera &</u>

<u>Assocs., P.C.</u>, No. 05-0971, 2007 WL 30291, at *4 (E.D.P.A. Jan. 4, 2007) (finding hourly rates

of approximately $400 to be reasonable for an attorney located in Eastern Pennsylvania engaged

in commercial litigation).  I therefore find Chewning's requested hourly rates to be within the

range of reasonable hourly rates for an attorney of Chewning's experience in this geographic

region.

Plaintiff's second challenge concerns the lack of "specificity" of the Turpin affidavit. Plaintiff appears to argues that, in order to be properly considered by the Court, an affidavit attesting to the reasonableness of fees must address the specific type of motion(s) upon which the requested fees are based.  See Pl. Supp. Opp. at para. 12.  Plaintiff provides no case law for this proposition, and Plaintiff's argument is without merit.  Indeed, the rule is that a reasonable hourly rate generally is determined by "'affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience.'" Ellis, No. 05-726, 2010 WL 715403, at *2 (quoting S.D. v. Manville Bd. of Educ., 989 F. Supp. 649, 656 (D.N.J.1998)).  Plaintiff's proposed standard goes beyond the normal burden imposed upon a party seeking attorney fees and is not in line with precedent.  Cf. Holzhauer v. Hayt, Hayt & Landau, LLC, No. 11-2336, 2012 WL 3286059, at *6 (D.N.J. Aug. 10, 2012) (quoting Washington v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1037-38 (3d Cir.1996)  (disagreeing with defendant's proposed heightened level of specificity in determining hours billed).  Because Plaintiff has provided no justification for imposing this more stringent burden in this case, I will consider the Turpin affidavit as further evidence of the reasonableness of Chewning's requested hourly rate.

In light of the foregoing evidence, I find that Chewning's hourly rates of $275 and $300 are reasonable for an attorney of her experience and area of practice in this geographic region. Chewning is an experienced litigation attorney.  Her rates have been attested to by an attorney familiar with rates in this region, and are also within the range of rates found to be reasonable by courts in this region.

I turn next to the amount of hours requested.  Chewning has certified that she spent 21.3

hours on the relevant motions as the attorney for ADR who was primarily responsible for this matter. Chewning supported her hours with detailed timekeeper logs, which allocated Chewning's work in tenth of an hour intervals and described the nature of the work with reasonable specificity. As an initial matter, the Court considers 21.3 hours to be reasonable, given the convoluted nature of this case, Plaintiff's multiple motions and filings, and the specific nature of the motion leading to the request for sanctions and the award of attorney fees. Nevertheless, because I have a "positive and affirmative function in the fee fixing process . . . [I] review the time charged, [and] decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."[6] Evans v. Port Auth. of New York & New Jersey, 273 F.3d 346, 361-62 (3d Cir. 2001) (internal citation and quotation marks omitted). Here, I will review Plaintiff's specific objections to Chewning's reported hours to determine whether they reflect a reasonable amount. See Pl. Supp. Opp. at 4-6.

Plaintiff first challenges the overall amount of time Chewning spent preparing her brief, and argues that Chewning billed "more than double the time" than did counsel for Brownstein. Pl. Supp. Opp. at para. 17. I am unpersuaded by Plaintiff's reasoning. Chewning's brief was longer than the brief submitted for Brownstein, and included additional legal arguments. Moreover, there mere fact that Chewning spent more hours on her brief than did counsel for Brownstein does not in itself demonstrate that Chewning's hours were "excessive, redundant or

---

[6]In that connection, however, I note that although a fee petition should include "some fairly definite information as to the hours devoted to various general activities . . . , it is not necessary to know the exact number of minutes nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Washington v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1037-38 (3d Cir.1996) (internal quotation marks omitted).

otherwise unnecessary." Chewning submitted a well-organized and reasoned brief, and prevailed on her arguments. I find that 16.5 hours is a reasonable amount to expend in preparation of a brief opposing Plaintiff's motion to change venue and seeking sanctions.

Plaintiff also challenges the amount of time Chewning spent on court filings, emails, and telephone calls with the Court and counsel. Id. at para. 18-19, 21. Plaintiff provides no argument other than the conclusory assertion that the time expended on these tasks was "excessive." After reviewing these records, I find that only one is excessive. Chewning certified that on July 28, 2011, she spent 18 minutes, or 0.3 hours, on filing a letter requesting an automatic extension of time. I find that 0.1 hour is a more appropriate amount of time spent on this task, and I will reduce Chewning's total hours accordingly.

Next, Plaintiff identifies two billing records that he argues were improperly included in Chewning's request for attorney fees. Specifically, Plaintiff claims that he "knows of no such filings" related to the records for September 22, 2011, and October 25, 2011, and thus the Court should not include these records in its calculations. I disagree. Plaintiff's inability to recall filings is not a valid basis to object to Chewning's requested fees. Moreover, all of these recorded tasks appear to be related to the motions underlying the award of attorney fees, and they occurred during the pendency of the litigation of that matter. I therefore will not reduce Chewning's hours in this regard.

Plaintiff further contends that Chewning included in her records time expended on other matters in the litigation that are not the subject of the Court's award of attorney fees. First, Plaintiff claims that the record for August 24, 2011, should be reduced slightly because it includes time spent "to send a courtesy copy of a brief" to the Court, which is not a task that

10

should be billed to the client.  Pl. Supp. Opp. at para. 20.  Plaintiff misreads Chewning's record for that day, which lists her tasks as reviewing Brownstein's motion for sanctions and "prepar[ing] [a] letter" to the Court regarding "courtesy copies of [a] brief."  Chewning March Cert. at Ex. A.  I find that such a letter properly may be billed to a client, and in any event, represents only a minimal amount of the 0.5 hours billed that day.  No reduction will be applied to this record.

Lastly, Plaintiff argues that the time spent preparing for an October 2011 hearing is excessive because it includes time spent on other motions not the subject of Plaintiff's sanctionable conduct.  Pl. Supp. Opp. at para. 23.  Chewning, however, stated in her certification that "where billing notation reflected billing for a block of time spent on multiple tasks, the total time for the entry has been adjusted to reflect only that time which was spent on tasks for which ADR Options was awarded sanctions."  Chewning March Cert. at para. 13.  The Court accepts Chewning's representation that the hours have been accurately adjusted, and further finds that the two hours expended in preparation for oral argument is reasonable.

The Court, having examined Chewning's hourly records and reducing them where appropriate, finds that Chewning reasonably expended 17.8 hours prior to September 30, 2011, and 5.4 hours after October 1, 2011 – 3.3 hours related to the motions and 2.1 hours preparing her certification and exhibits related to attorney fees.

Accordingly, the Court calculates the lodestar amount for counsel for ADR as follows:

|                   | Hourly Rate | Hours | Lodestar Amount |
|-------------------|-------------|-------|-----------------|
| Kerri E. Chewning | $275.00     | 17.8  | $4895.00        |
| Kerri E. Chewning | $300.00     | 5.4   | $1620.00        |
|                   |             | **Total** | $6515.00    |

2. Brownstein

The calculation for fees requested by counsel for Brownstein is more straightforward. Candidus K. Dougherty, Esq., counsel for Brownstein, submitted a certification detailing the costs, expenses, and attorney fees incurred by Dougherty, Jeffrey McCarron, Esq., and their firm's paralegals. Dougherty did not file a supplemental certification in response to the Court's September 25, 2012 letter, and Plaintiff has not objected to Dougherty's requested rates or hours worked.

Dougherty averred that, at all times relevant, she was an associate with the law firm Swartz Campbell LLC, and the attorney primarily responsible for handling the matter for Brownstein. Dougherty attested that she has been an attorney at that firm since 2008, practicing primarily in the area of lawyer malpractice defense as well as publishing numerous legal articles. Regarding McCarron, Dougherty attested that he is an experienced litigation attorney, having been in private practice over twenty years and, at all times relevant, a partner at the same firm.

Dougherty certified her hourly rate at $165. Dougherty further certified that McCarron's hourly rate was $215. Lastly, Dougherty certified that paralegals assisted on the relevant motions at an hourly rate of $95. Given that the Court has already determined that Chewning's hourly rate of $300 is reasonable, and that Plaintiff does not challenge Dougherty or McCarron's hourly rates – indeed, Plaintiff concedes that Dougherty's rate is reasonable – the Court finds that the hourly rates set forth in Dougherty's certification are reasonable for the same reasons identified in connection with Chewning's hourly rates.

Dougherty also attested that she spent 7.3 hours on relevant motions and 2.2 hours on her certification, McCarron spent 1.3 hours on relevant motions, and paralegals spent 0.4 hours on

relevant motions.  Like Chewning, Dougherty provided a detailed and specific timekeeper record documenting hours worked and costs expended.  Again, Plaintiff does not challenge any of the hours claimed by Dougherty, and the Court finds that the requested hours are reasonable.

Accordingly, the Court calculates the lodestar amount for counsel for Brownstein as follows:

|  | **Hourly Rate** | **Hours** | **Lodestar Amount** |
|---|---|---|---|
| Jeffrey McCarron | $215.00 | 1.3 | $279.50 |
| Candidus K. Dougherty | $165.00 | 9.5 | $1567.50 |
| Paralegals | $95.00 | 0.4 | $38.00 |
|  |  | **Total** | $1885.00 |

Additionally, I find Dougherty's total claimed costs and expenses in the amount of $16.70 to be reasonable.

### III. CONCLUSION

For the foregoing reasons, Defendant ADR is awarded attorney fees in the amount of $6515.00, and Defendant Brownstein is awarded attorney fees in the amount of $1885.00 and costs and expenses in the amount of $16.70.

Dated: October 22, 2012            /s/ Freda L. Wolfson
_____

**FREDA L. WOLFSON, U.S.D.J.**

13